**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, | Civil Action No.:  0:15-cv-03024 |
| Plaintiff, | |
| v. | **COMPLAINT FOR TRADEMARK INFRINGEMENT** |
| RICK ROX d/b/a KING ROX, a Minnesota individual, SCOOPS SPORTS BAR INC., a Minnesota Corporation, and FREDDY'S TIKI HUT, LLC, a Minnesota Limited Liability Company, | |
| Defendants. | |

The Plaintiff, Phoenix Entertainment Partners, LLC, (hereinafter, "PEP" will be used to refer to both Phoenix Entertainment Partners, LLC, and its predecessor Slep-Tone Entertainment Corporation), by its undersigned counsel, hereby complains of Defendant Rick Rox d/b/a King Rox (hereinafter, "Rox"), Defendant Scoops Sports Bar Inc. (hereinafter "Scoops"), and Defendant Freddy's Tiki Hut, LLC (hereinafter, "Freddy's") and for its Complaint hereby alleges as follows:

## SUMMARY

1.      Briefly stated, Defendant Rox has infringed PEP's federally registered SOUND CHOICE® trademarks and service marks, has infringed PEP's distinctive and protectable trade dress, and has committed acts of unfair competition involving the false designation of the origin of goods and services—and violated related state laws—by making or acquiring unauthorized karaoke accompaniment tracks that are marked with the SOUND CHOICE® trademarks and service marks and the trade dress, and by using those unauthorized goods and displaying the

SOUND CHOICE® trademarks and service marks and the trade dress in connection with his commercial karaoke entertainment business.

2.      Briefly stated, Defendant Scoops has infringed PEP's federally registered SOUND CHOICE® trademarks and service marks, through Rox, has infringed PEP's distinctive and protectable trade dress, through Rox, and has committed acts of unfair competition involving the false designation of the origin of goods and services—and violated related state laws—by permitting Rox to display unauthorized karaoke accompaniment tracks that are marked with the SOUND CHOICE® trademarks and service marks and the trade dress in connection with Rox's commercial karaoke entertainment business.

3.      Briefly stated, Defendant Freddy's has infringed PEP's federally registered SOUND CHOICE® trademarks and service marks, through Rox, has infringed PEP's distinctive and protectable trade dress, through Rox, and has committed acts of unfair competition involving the false designation of the origin of goods and services—and violated related state laws—by permitting Rox to display unauthorized karaoke accompaniment tracks that are marked with the SOUND CHOICE® trademarks and service marks and the trade dress in connection with Rox's commercial karaoke entertainment business.

## JURISDICTION AND VENUE

4.      This action arises under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1114 and 1125.  This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

5.      This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to PEP's common law

unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

6.     This Court has supplemental jurisdiction over the subject matter of PEP's state law claims pursuant to 28 U.S.C. § 1367(a), in that these claims are so related to PEP's federal claims that they form part of the same case or controversy.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because Defendant Rox resides in the State of Minnesota and the federal judicial district for the District of Minnesota, Defendant Scoops transacts business in the State of Minnesota and the federal judicial district for the District of Minnesota, and Defendant Freddy's transacts business in the State of Minnesota and the federal judicial district for the District of Minnesota.

8.     This Court has personal jurisdiction over each Defendant, in that Defendant Rox resides in this State and federal judicial district and all Defendants conduct significant business here, and in that the acts of which the Defendants stand accused were undertaken in this State and federal judicial district.

## THE PARTIES

9.     Plaintiff PEP is a North Carolina LLC having its principal place of business in Pineville, North Carolina.

10.     Defendant Rox is a Minnesota individual having an address in Minneapolis, Minnesota, that has provided karaoke entertainment to various venues in Minnesota.  Defendant Rox has been hired by Scoops to provide karaoke entertainment to Scoops's customers at Scoops Sports Bar in Coon Rapids, Minnesota.  Defendant Rox has been hired by Freddy's to provide karaoke entertainment to Freddy's customers at Freddy's Tiki Hut in Maplewood, Minnesota.

11.     Defendant Scoops is a Minnesota Corporation that operates a restaurant called Scoops Sports Bar in Coon Rapids, Minnesota.  Scoops operates a commercial establishment that provides karaoke entertainment to its patrons as an inducement for their patronage and purchase of food, drink, and other concessions.

12.     Defendant Freddy's is a Minnesota Limited Liability Company that operates a restaurant called Freddy's Tiki Hut in Maplewood, Minnesota.  Freddy's operates a commercial establishment that provides karaoke entertainment to its patrons as an inducement for their patronage and purchase of food, drink, and other concessions.

## BACKGROUND FACTS

13.     PEP is the owner, by assignment from Slep-Tone Entertainment Corporation ("Slep-Tone"), of federally registered SOUND CHOICE® trademarks and service marks, and distinctive and protectable trade dress, together making up the SOUND CHOICE brand.

14.     PEP produces and distributes karaoke accompaniment tracks under the SOUND CHOICE brand.

15.     Over the course of nearly three decades in business, PEP invested more than $18 million to re-record and replicate the authentic sound of approximately 18,000 popular songs across different eras and genres of music.

16.     SOUND CHOICE-branded karaoke tracks are wildly popular among karaoke entertainment providers, patrons, and home consumers.  According to some estimates, more than half of all accompaniment tracks played at karaoke shows in the United States originated from Slep-Tone's recordings.

17.    The popularity of SOUND CHOICE-branded karaoke tracks derives from the market's perception that the recordings are usually the most faithful to the sound of the original recording artist, a characteristic highly valued by karaoke singers.

18.    SOUND CHOICE-branded karaoke tracks are also perceived by the market as providing highly accurate singing cues as part of the video display, a characteristic that is also highly valued by karaoke singers.

19.    Throughout its history, PEP released its products for commercial use exclusively on physical media—initially, cassette tapes, and then compact discs beginning in approximately 1994.

20.    As such, in the marketplace for commercial karaoke tracks, authentic SOUND CHOICE karaoke tracks exist only on compact discs.  The number of SOUND CHOICE cassette tapes still in occasional commercial use is likely trivial if not zero, as that technology is considered "dead."

21.    Unauthorized SOUND CHOICE-branded karaoke tracks are widely available from numerous sources, such as through illicit downloads and file-sharing sites and through preloaded hard drives often sold through online marketplaces such as craigslist.org.

22.    Unauthorized SOUND CHOICE-branded karaoke tracks are relatively easy to make, even to novice users, with computer technology that is readily accessible, using original and authentic SOUND CHOICE-branded karaoke tracks as templates.

23.    These unauthorized tracks are easily stored on hard drives, USB drives, and similar media, and are thus easily duplicated to other media, making as many duplicates as wanted.

24.     The making of these unauthorized tracks is undertaken without PEP's ability to monitor or control the process or to control the quality of the resulting product.

25.     The unauthorized copying process requires certain format changes that degrade the quality of the unauthorized product in comparison to the original.

26.     This degradation manifests in a reduction in sound and graphics quality—a reduction that is antithetical to the reputation of SOUND CHOICE-branded products as being of the highest quality—although in a noisy environment, these changes may or may not be immediately obvious to a casual consumer.

27.     Nevertheless, these inferior unauthorized copies are marked with PEP's SOUND CHOICE brand, including counterfeits of PEP's federally registered SOUND CHOICE® trademarks and service marks and the unauthorized use of PEP's distinctive and protectable trade dress,.

28.     These free or low-cost unauthorized copies are then used to provide commercial karaoke services without any compensation to or control by PEP.

29.     Instead, these activities have driven the demand for original discs down to uneconomically feasible levels, because it has become relatively easy to illicitly obtain, for free or at a nominal cost, products that if legitimate would cost tens of thousands of dollars when purchased at retail.

30.     Since approximately 2007, PEP has offered karaoke operators who want the convenience of operating from computer hard drives instead of original discs the opportunity to obtain permission to do so with PEP's ability to audit and control the activity, under very specific parameters that require the operator to own one original media that corresponds to every duplicate made.

## THE RIGHTS OF THE PLAINTIFF

31.     Plaintiff PEP is the owner of U.S. Trademark Registration No. 1,923,448, issued October 3, 1995, and renewed once, for the trademark SOUND CHOICE, for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions."

32.     Plaintiff PEP is the owner of U.S. Service Mark Registration No. 4,099,045, issued February 14, 2012, for the trademark SOUND CHOICE, for "conducting entertainment exhibitions in the nature of karaoke shows."

33.     Plaintiff PEP is the owner of U.S. Trademark Registration No. 2,000,725, issued September 17, 1996, and renewed once, for a display trademark (SOUND CHOICE and design) as follows:



for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions."

34.     Plaintiff PEP is the owner of U.S. Service Mark Registration No. 4,099,052, issued February 14, 2012, for the same display trademark (SOUND CHOICE and design) as in the preceding paragraph, for "conducting entertainment exhibitions in the nature of karaoke shows."

35.     For the entire time its marks identified above ("the Sound Choice Marks") have been federally registered, PEP has provided the public, including Rox, Scoops, and Freddy's,

with notice of those federal registrations through the consistent display of the symbol ® with its marks as used.

36.     For the entire time the Sound Choice marks have been federally registered, PEP has affixed U.S. Trademark Registration No. 1,923,448 and U.S. Trademark Registration No. 2,000,725 to the goods including "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions" that are sold or licensed by PEP.

37.     For the entire time the Sound Choice marks have been federally registered, PEP has licensed the use of U.S. Service Mark Registration No. 4,099,045 and U.S. Service Mark Registration No. 4,099,052 to licensees for the service of "conducting entertainment exhibitions in the nature of karaoke shows," in accordance with 15 U.S.C. § 1055.

38.     Principally, the Sound Choice Marks are indicators of PEP as the origin of karaoke accompaniment tracks, meaning that those marks indicate that the tracks to which they are applied were made and distributed by PEP or at its direction and under its control.  PEP is the owner of distinctive and protectable trade dress associated with its graphical displays ("the Trade Dress").  This distinctive and protectable trade dress includes, at a minimum, (a) the use of a particular typeface, style, and visual arrangement in displaying the lyrics; (b) the Sound Choice Marks; and (c) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue.

39.     PEP has used its trade dress continuously and substantially exclusively for a period of decades.

40.     The individual and collected elements of the Trade Dress have acquired secondary meaning as an indicator of PEP as a source, effectively functioning as a visual trademark.

41.     The aforementioned trade dress serves to distinguish PEP's tracks from the tracks of their competitors, such that persons who are even minimally frequent consumers of karaoke entertainment services such as those provided by Rox are capable of identifying a particular karaoke track as originating with PEP simply by examining the Trade Dress or any significant portion thereof, whether or not the Sound Choice Marks are also displayed.

42.     The elements of the Trade Dress represent specific design choices by PEP.  There are many other ways to convey the information necessary to permit a karaoke singer to be appropriately supported in his or her performance.

43.     No competitor of PEP is required to use any element of the Trade Dress to accomplish the lyric cueing, and indeed all of the Plaintiff's known competitors are known to use other trade dress in accomplishing the lyric cueing.

## ACTIVITIES OF RICK ROX

44.     Defendant Rox provides karaoke services to various venues in Minnesota, principally concentrated in the Minneapolis and St. Paul, MN area, including Scoops Sports Bar operated by Defendant Scoops Sports Bar, Inc. and Freddy's Tiki Hut operated by Defendant Freddy's Tiki Hut, LLC.

45.     On information and belief, in order to provide services, rather than using original karaoke discs that Rox possesses (if Rox indeed possesses such discs), Rox relies upon one or more computer hard drives that are substantially identical in content that store files representing karaoke accompaniment tracks.

46.     On information and belief, Rox created, or directed another to create, or otherwise acquired from a third party the files that are stored on his computer hard drives.

47.     PEP did not authorize, cause, control, or know about the creation of the files stored on Rox's computer hard drives at the time those files were so stored.

48.     On information and belief, many of the files stored on the Rox's computer hard drives are unauthorized copies of PEP karaoke tracks that are marked with counterfeits of the Sound Choice Marks and the Trade Dress.

49.     When played using necessary software, those files cause the counterfeit Sound Choice Marks and the Trade Dress to be displayed as part of the associated video component of the karaoke tracks they represent.

50.     PEP did not authorize Rox to create or use karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks or the Trade Dress.

51.     As such, the placement of the Sound Choice Marks and the Trade Dress upon Rox's computer files is a false designation of the origin of those computer files.

52.     At all times relevant to the causes of action stated herein, Rox has known that the creation and use of karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks and/or the Trade Dress is not authorized.

53.     Rox's files, which function as karaoke accompaniment tracks, are unauthorized copies of genuine SOUND CHOICE-branded tracks, and specifically include counterfeits of the Sound Choice marks that are affixed to and displayed in conjunction with the unauthorized SOUND CHOICE-branded tracks.

54.     A patron or unwitting customer of Rox, when confronted with the display of the counterfeit Sound Choice Marks and the Trade Dress at one of his shows, is likely to be confused into believing, falsely, that PEP created the unauthorized tracks in use or authorized their creation, or that PEP is otherwise the "origin" of the unauthorized tracks as that term is used in the Trademark Act.

55.     A patron or unwitting customer of Rox, when confronted with the display of the counterfeit Sound Choice Marks and the Trade Dress at one of his shows, is also likely to be confused into believing, falsely, that PEP sponsored or approved Rox's services and commercial activities by licensing use of the Sound Choice Marks and the Trade Dress by Rox.

56.     Rox's use of the computer files representative of karaoke accompaniment tracks is commercial in nature because Rox is paid to provide access to and play those computer files and tracks at karaoke shows.

57.     Additionally, even if a particular unauthorized track is not played at a given show, the act of making that unauthorized track available for play at a show is a commercial act for which Rox is compensated and which inure to his benefit.

58.     On information and belief, Rox's use of unauthorized accompaniment tracks is not limited to PEP's tracks, but extends to the use of unauthorized copies of numerous other manufacturers' tracks as well, on the same terms as above.

59.     On information and belief, the counterfeit Sound Choice Marks and the Trade Dress were displayed on video monitors during various songs played by Rox.

## ACTIVITIES OF DEFENDANT SCOOPS

60.     Scoops hired Rox to provide commercial karaoke services at its restaurant.

61.     Scoops has the right and ability to control whether its contractors use authentic or unauthorized materials to provide services.

62.     PEP informed Scoops of the infringing and counterfeit character of Scoops's contractor's karaoke accompaniment tracks. *See* Exhibit A.

63.     PEP offered Scoops the opportunity to enter into its Verified Compliance Safe Harbor Program, which is a free program that protects venues from liability for the acts of its contractors in exchange for requiring its contractors to provide information about their karaoke systems to enable PEP to assess whether those contractors are operating legally. *See id.*

64.     PEP also provides a certification program to karaoke operators as a means by which venues can determine, without significant inquiry, whether the karaoke operator they wish to hire is using authentic materials.

65.     As a result of PEP's efforts, Scoops has actual knowledge of the infringing and counterfeit nature of Rox' karaoke materials.

66.     Despite that knowledge, Scoops refused to terminate Rox's services.

67.     Despite that knowledge, Scoops continued to receive a financial benefit from the provision of infringing karaoke services at their establishment by Rox, through the attraction of paying patrons to their establishment.

68.     As such, Scoops operated in actual or apparent partnership with Rox, in a symbiotic relationship from which both benefit.

69.     Scoops is liable for the acts of trademark infringement, trade dress infringement, and unfair competition directly engaged in by Rox on its respective premises or for its benefit.

## **ACTIVITIES OF DEFENDANT FREDDY'S**

70.     Freddy's hired Rox to provide commercial karaoke services at its restaurant.

71.     Freddy's has the right and ability to control whether its contractors use authentic or unauthorized materials to provide services.

72.     PEP informed Freddy's of the infringing and counterfeit character of Freddy's contractor's karaoke accompaniment tracks. *See* Exhibit B.

73.     PEP offered Freddy's the opportunity to enter into its Verified Compliance Safe Harbor Program, which is a free program that protects venues from liability for the acts of its contractors in exchange for requiring its contractors to provide information about their karaoke systems to enable PEP to assess whether those contractors are operating legally. *See id.*

74.     PEP also provides a certification program to karaoke operators as a means by which venues can determine, without significant inquiry, whether the karaoke operator they wish to hire is using authentic materials.

75.     As a result of PEP's efforts, Freddy's has actual knowledge of the infringing and counterfeit nature of Rox' karaoke materials.

76.     Despite that knowledge, Freddy's refused to terminate Rox's services.

77.     Despite that knowledge, Freddy's continued to receive a financial benefit from the provision of infringing karaoke services at their establishment by Rox, through the attraction of paying patrons to their establishment.

78.     As such, Freddy's operated in actual or apparent partnership with Rox, in a symbiotic relationship from which both benefit.

79.     Freddy's is liable for the acts of trademark infringement, trade dress infringement, and unfair competition directly engaged in by Rox on its respective premises or for its benefit.

## DAMAGES

80.    Rox's, Scoops's, and Freddy's unauthorized use of PEP's Sound Choice Marks has damaged PEP.

81.    Rox, Scoops, and Freddy's have damaged PEP in an amount to be proven at trial but not less than $25,000 for each karaoke system Rox owns or operates and which contains unauthorized karaoke tracks that infringe the Sound Choice Marks and Trade Dress as detailed above, based upon Rox's foregone purchase of authentic original media.

82.    Rox has also enjoyed years of revenues attributable in substantial part to his use of unauthorized SOUND CHOICE-branded karaoke tracks to provide karaoke services for money.

83.    Rox's illicit activities have also allowed him to compete unfairly against PEP's legitimate customers by lowering the cost of doing business through piracy of the music materials he uses.

84.    Those illicit activities exerted illegitimate and unfair pressure upon the market for karaoke services in the areas in which Rox operates by helping to crowd higher-cost but legitimate operators out of the market.

85.    Rox's, Scoops's, and Freddy's acts deprived PEP of revenue by discouraging legitimate operators from investing in legitimate SOUND CHOICE-branded products.

86.    Rox's, Scoops's, and Freddy's unauthorized use of and benefit from the use of the Sound Choice Marks has damaged PEP both in the aggregate and individually.

87.    Rox, Scoops, and Freddy's have damaged PEP in an amount of at least $100,000.

88.    Moreover, by exerting illegitimate and unfair pressure upon the market for karaoke services in this State and judicial district through the use of unauthorized material belonging to PEP and to other manufacturers, Rox, Scoops, and Freddy's have cost PEP in

excess of $100,000 in revenue from legitimate sources crowded out of the market by the Defendants' unauthorized acts.

## FIRST CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT UNDER 35 U.S.C. § 1114
### AGAINST ROX

89.     PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-88 of this Complaint.

90.     Rox used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

91.     Rox's use of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

92.     PEP did not license Rox to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided at Rox's venue(s).

93.     Use of the Sound Choice Marks by Rox is likely to cause confusion, or to cause mistake, or to deceive customers at the venues in which Rox performs into believing that the services those customers are receiving are being provided with the authorization of the PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

94.     Rox's acts were willful and knowing.

95.     PEP has been damaged by Rox's infringing activities.

96.     Unless enjoined by the Court, Rox's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

## SECOND CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT UNDER 35 U.S.C. § 1114
## AGAINST SCOOPS

97.     PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-96 of this Complaint.

98.     Scoops knowingly directly benefited from the use of, and through Rox, used a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of karaoke entertainment services, by displaying and permitting to be displayed the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

99.     Scoops's use, through Rox, of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

100.    PEP did not license Scoops to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided at its commercial establishment.

101.    Use of the Sound Choice Marks in the manner attributable to Scoops is likely to cause confusion, or to cause mistake, or to deceive Scoops's customers into believing that the services those customers are receiving are being provided with the authorization of PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

102.     Scoops's acts were willful and knowing.

103.    PEP has been damaged by infringing activities of Scoops.

104.    Unless enjoined by the Court, Scoops's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

### THIRD CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT UNDER 35 U.S.C. § 1114
### AGAINST FREDDY'S

105.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-104 of this Complaint.

106.    Freddy's knowingly directly benefited from the use of, and through Rox, used a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of karaoke entertainment services, by displaying and permitting to be displayed the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

107.    Freddy's use, through Rox, of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

108.    PEP did not license Freddy's to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided at its commercial establishment.

109.    Use of the Sound Choice Marks in the manner attributable to Freddy's is likely to cause confusion, or to cause mistake, or to deceive Freddy's customers into believing that the services those customers are receiving are being provided with the authorization of PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

110.    Freddy's acts were willful and knowing.

111.    PEP has been damaged by infringing activities of Freddy's.

112.    Unless enjoined by the Court, Freddy's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

### FOURTH CLAIM FOR RELIEF
### UNFAIR COMPETITION RELATING TO TRADEMARKS UNDER 15 U.S.C. § 1125(a)
### AGAINST ROX

113.     PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-112 of this Complaint.

114.     On each occasion when Rox caused or permitted a SOUND CHOICE-branded accompaniment track to be played during a karaoke show, Rox caused or permitted the display of the Sound Choice Marks in connection with his karaoke entertainment services.

115.     The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP created the tracks in use or authorized their creation, or that PEP is otherwise the "origin" of the tracks as that term is used in the Trademark Act

116.     The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Rox's services and commercial activities by licensing the Sound Choice Marks to Rox.

117.     The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by PEP and purchased by Rox for use in providing karaoke entertainment services.

118.     Rox's use of the Sound Choice Marks in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Rox had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

119.     Because PEP has been denied this revenue, it has been damaged by Rox's uses.

120.     On each occasion when Rox displayed an unauthorized accompaniment track from a manufacturer other than PEP during a karaoke show, Rox caused the display of the words, names, and symbols of the other manufacturer in connection with his karaoke services.

121.     Upon information and belief, Rox's use of those words, names, and symbols falsely designates the other manufacturer as the origin of the unauthorized track, or deceives those present during the display of the words, names, and symbols into believing, falsely, that the other manufacturer sponsored or approved Rox's services and commercial activities, when in fact Rox or an upstream but unauthorized provider of the track was the origin of that track and Rox was not authorized to use the words, names, and symbols.

122.     The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the unauthorized tracks are legitimate, authorized, and authentic materials that Rox acquired in a legitimate manner.  The display of the false designations of origin is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by those manufacturers and purchased by Rox, or that the manufacturer sponsored or approved Rox's services and commercial activities.

123.     Rox's unauthorized use of the words, names, or symbols of other manufacturers in this fashion damages PEP by enabling Rox to provide karaoke entertainment services at a lower cost than persons who acquire those materials legitimately.

124.     PEP's legitimate customers cannot compete against Rox and thus prevent PEP's legitimate customers from making purchases of material from PEP, resulting in a denial of revenue to PEP.

125.     Because PEP has been denied this revenue, it has been damaged by Rox's unauthorized use of the words, names, or symbols of other manufacturers.

126.     Unless enjoined by the Court, Rox's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

### FIFTH CLAIM FOR RELIEF
### UNFAIR COMPETITION RELATING TO TRADEMARKS UNDER 15 U.S.C. § 1125(a) AGAINST SCOOPS

127.     PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-126 of this Complaint.

128.     On each occasion when Scoops permitted a SOUND CHOICE-branded accompaniment track to be played during a karaoke show, Scoops permitted the display of the Sound Choice Marks in connection with Rox's karaoke entertainment services.

129.     The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Scoops's services and commercial activities.

130.     The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Scoops's services and commercial activities by licensing the Sound Choice Marks to Rox.

131.     The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by PEP and purchased by Rox for use in providing karaoke entertainment services in Scoops's venue.

132.    Rox's use of the Sound Choice Marks in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Rox had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

133.    Because PEP has been denied this revenue, it has been damaged by Scoops's uses.

134.    Unless enjoined by the Court, Scoops's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

**SIXTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION RELATING TO TRADEMARKS UNDER 15 U.S.C. § 1125(a)**
**AGAINST FREDDY'S**

135.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-134 of this Complaint.

136.    On each occasion when Freddy's permitted a SOUND CHOICE-branded accompaniment track to be played during a karaoke show, Freddy's permitted the display of the Sound Choice Marks in connection with Rox's karaoke entertainment services.

137.    The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Freddy's services and commercial activities.

138.    The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Freddy's services and commercial activities by licensing the Sound Choice Marks to Rox.

139.     The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by PEP and purchased by Rox for use in providing karaoke entertainment services in Freddy's venue.

140.     Rox's use of the Sound Choice Marks in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Rox had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

141.     Because PEP has been denied this revenue, it has been damaged by Freddy's uses.

142.     Unless enjoined by the Court, Freddy's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

### SEVENTH CLAIM FOR RELIEF
### UNFAIR COMPETITION RELATING TO TRADE DRESS UNDER 15 U.S.C. § 1125(a) AGAINST ROX

143.     PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-142 of this Complaint.

144.     On each occasion when Rox caused or permitted an unauthorized SOUND CHOICE-branded accompaniment track to be played during a karaoke show, Rox caused or permitted the display of the Trade Dress in connection with his karaoke entertainment services.

145.     The display of the Trade Dress is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP created the tracks in use or authorized their creation, or that PEP is otherwise the "origin" of the tracks as that term is used in the Trademark Act.

146.    The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Rox's services and commercial activities by licensing the Sound Choice Marks and the Trade Dress to Rox.

147.    The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by PEP and purchased by Rox for use in providing karaoke entertainment services.

148.    Rox's use of the Trade Dress in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Rox had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

149.    Because PEP has been denied this revenue, it has been damaged by Rox's uses.

150.    On each occasion when Rox displayed an unauthorized accompaniment track from a manufacturer other than PEP during a karaoke show, Rox caused the display of the words, names, and symbols of the other manufacturer in connection with his karaoke services.

151.    Upon information and belief, Rox's use of those words, names, and symbols falsely designates the other manufacturer as the origin of the unauthorized track, or deceives those present during the display of the words, names, and symbols into believing, falsely, that the other manufacturer sponsored or approved Rox's services and commercial activities, when in fact Rox or an upstream but unauthorized provider of the track was the origin of that track and Rox was not authorized to use the words, names, and symbols.

152.     The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the unauthorized tracks are legitimate, authorized, and authentic materials that Rox acquired in a legitimate manner.  The display of the false designations of origin is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by those manufacturers and purchased by Rox, or that the manufacturer sponsored or approved Rox's services and commercial activities.

153.     Rox's unauthorized use of the words, names, or symbols of other manufacturers in this fashion damages PEP by enabling Rox to provide karaoke entertainment services at a lower cost than persons who acquire those materials legitimately.

154.     PEP's legitimate customers cannot compete against Rox and thus prevent PEP's legitimate customers from making purchases of material from PEP, resulting in a denial of revenue to PEP.

155.     Because PEP has been denied this revenue, it has been damaged by Rox's unauthorized use of the words, names, or symbols of other manufacturers.

156.     Unless enjoined by the Court, Rox's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

**EIGHTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION RELATING TO TRADE DRESS UNDER 15 U.S.C. § 1125(a)**
**AGAINST SCOOPS**

157.     PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-156 of this Complaint.

158.     On each occasion when Scoops permitted a SOUND CHOICE-branded accompaniment track to be played during a karaoke show, Scoops permitted the display of the Trade Dress in connection with Rox's karaoke entertainment services.

159.     The display of the Trade Dress is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Scoops's services and commercial activities.

160.     The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved Scoops's services and commercial activities by licensing the Trade Dress to Rox.

161.     The display of the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by PEP and purchased by Rox for use in providing karaoke entertainment services in Scoops's venue.

162.     Rox's use of the Trade Dress in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Rox had legitimately acquired bona fide original media instead of acquiring unauthorized copies, in that PEP would have received revenue from such sales.

163.     Because PEP has been denied this revenue, it has been damaged by Scoops's uses.

164.     Unless enjoined by the Court, Scoops's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

**<u>NINTH CLAIM FOR RELIEF</u>**
**UNFAIR COMPETITION RELATING TO TRADE DRESS UNDER 15 U.S.C. § 1125(a)**

**AGAINST FREDDY'S**

165.    PEP repeats and incorporates by reference herein its allegations contained in
Paragraphs 1-164 of this Complaint.

166.    On each occasion when Freddy's permitted a SOUND CHOICE-branded
accompaniment track to be played during a karaoke show, Freddy's permitted the display of the
Trade Dress in connection with Rox's karaoke entertainment services.

167.    The display of the Trade Dress is likely to cause confusion, or to cause mistake,
or to deceive those present during the display, in that those present are likely to be deceived into
believing, falsely, that PEP sponsored or approved Freddy's services and commercial activities.

168.    The display of the Trade Dress is also likely to cause confusion, or to cause
mistake, or to deceive those present during the display, in that those present are likely to be
deceived into believing, falsely, that PEP sponsored or approved Freddy's services and
commercial activities by licensing the Trade Dress to Rox.

169.    The display of the Trade Dress is also likely to cause confusion, or to cause
mistake, or to deceive those present during the display, in that those present are likely to be
deceived into believing, falsely, that the works being performed were sold by PEP and purchased
by Rox for use in providing karaoke entertainment services in Freddy's venue.

170.    Rox's use of the Trade Dress in this fashion or in a more appropriate fashion
would have inured to the benefit of PEP if Rox had legitimately acquired bona fide original
media instead of acquiring unauthorized copies, in that PEP would have received revenue from
such sales.

171.    Because PEP has been denied this revenue, it has been damaged by Freddy's uses.

Unless enjoined by the Court, Freddy's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

<u>TENTH CLAIM FOR RELIEF</u>
**MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**AGAINST ROX**

172.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-171 of this Complaint.

173.    Rox used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

174.    Rox's acts of infringement occurred during the conduct of trade or commerce, from which he derived an economic benefit.

175.    Rox's acts of infringement constitute unfair or deceptive acts or practices within the meaning of Minn. Stat. § 325D.43 et seq.

176.    Rox's acts of infringement cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by PEP.

177.    As a direct and proximate result of Rox's acts of infringement PEP has suffered a pecuniary loss, including the loss of revenue associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the demand for the contents of those discs, which revenue would have been received but for Rox's acts in creating or acquiring counterfeits of PEP's accompaniment tracks.

178.     As such, PEP has been damaged and is likely to be further damaged by a

deceptive trade practice of Rox within the meaning of Minn. Stat. § 325D.44.

179.     Unless enjoined by the Court, Rox's unfair competition activities as described

above will continue unabated and will continue to cause harm to PEP.

## ELEVENTH CLAIM FOR RELIEF
### MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### AGAINST SCOOPS

180.     PEP repeats and incorporates by reference herein its allegations contained in

Paragraphs 1-179 of this Complaint.

181.     Scoops hired Rox to provide commercial karaoke services at its establishment,

and it had the right and ability to control the use of unauthorized or counterfeit materials for said

commercial purposes.

182.     Scoops permitted Rox to engage in acts of infringement of the Sound Choice

Marks and the Trade Dress, in derogation of PEP's common law and statutory rights in those

marks.

183.     Rox's acts of infringement occurred during the conduct of trade or commerce,

from which Scoops derived an economic benefit.

184.     Scoops enabling Rox's acts of infringement constitute unfair or deceptive acts or

practices within the meaning of Minn. Stat. § 325D.43 et seq.

185.     Scoops enabling Rox's acts of infringement cause likelihood of confusion or of

misunderstanding as to affiliation, connection, or association with or certification by PEP.

186.     As a direct and proximate result of Rox's acts of infringement and Scoops's

encouragement thereof, PEP has suffered a pecuniary loss, including the loss of revenue

associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the

demand for the contents of those discs, which revenue would have been received but for Rox's acts in creating or acquiring counterfeits of PEP's accompaniment tracks.

187.    As such, PEP has been damaged and is likely to be further damaged by a deceptive trade practice of Rox, aided by Scoops's encouragement, within the meaning of Minn. Stat. § 325D.44.

188.    Unless enjoined by the Court, Rox's unfair competition activities, aided by Scoops's encouragement, as described above will continue unabated and will continue to cause harm to PEP.

**TWELFTH CLAIM FOR RELIEF**
**MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**AGAINST FREDDY'S**

189.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-188 of this Complaint.

190.    Freddy's hired Rox to provide commercial karaoke services at its establishment, and it had the right and ability to control the use of unauthorized or counterfeit materials for said commercial purposes.

191.    Freddy's permitted Rox to engage in acts of infringement of the Sound Choice Marks and the Trade Dress, in derogation of PEP's common law and statutory rights in those marks.

192.    Rox's acts of infringement occurred during the conduct of trade or commerce, from which Freddy's derived an economic benefit.

193.    Freddy's enabling Rox's acts of infringement constitute unfair or deceptive acts or practices within the meaning of Minn. Stat. § 325D.43 et seq.

194.    Freddy's enabling Rox's acts of infringement cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by PEP.

195.    As a direct and proximate result of Rox's acts of infringement and Freddy's encouragement thereof, PEP has suffered a pecuniary loss, including the loss of revenue associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the demand for the contents of those discs, which revenue would have been received but for Rox's acts in creating or acquiring counterfeits of PEP's accompaniment tracks.

196.    As such, PEP has been damaged and is likely to be further damaged by a deceptive trade practice of Rox, aided by Freddy's encouragement, within the meaning of Minn. Stat. § 325D.44.

197.    Unless enjoined by the Court, Rox's unfair competition activities, aided by Freddy's encouragement, as described above will continue unabated and will continue to cause harm to PEP.

## THIRTEENTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION
## AGAINST ROX

198.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-197 of this Complaint.

199.    Rox used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

200.    Rox's use of the Sound Choice Marks and the Trade Dress was open and public and was for the commercial benefit of Rox and the business venues where he performs.

201.    PEP did not license Rox to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks or the Trade Dress in connection with the services Rox provides.

202.    Use of the Sound Choice Marks and the Trade Dress in the manner attributable to Rox is likely to cause confusion, or to cause mistake, or to deceive customers at the venues in which Rox performs into believing that the services those customers are receiving are being provided with the authorization of the PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

203.    Rox's acts were willful and knowing.

204.    PEP has been damaged by Rox's infringing activities.

205.    Unless enjoined by the Court, Rox's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

**FOURTEENTH CLAIM FOR RELIEF**
**COMMON LAW UNFAIR COMPETITION**
**AGAINST SCOOPS**

206.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-205 of this Complaint.

207.    Scoops knowingly directly benefited from the use of, and through Rox, used a reproduction, counterfeit, or copy of the SOUND CHOICE Marks in connection with the provision of karaoke entertainment services, by displaying and permitting to be displayed the reproduction, counterfeit, or copy of the SOUND CHOICE Marks during the provision of those services.

208.    Scoops's use of the Sound Choice Marks and the Trade Dress was open and public and was for the commercial benefit of Scoops.

209.    PEP did not license Scoops to make, acquire, or use reproductions, counterfeits, or copies, or to use the SOUND CHOICE Marks in connection with the services provided at its commercial establishment.

210.    Use of the SOUND CHOICE Marks in the manner attributable to Scoops is likely to cause confusion, or to cause mistake, or to deceive Scoops's customers into believing that the services those customers are receiving are being provided with the authorization of PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

211.    Scoops's acts were willful and knowing.

212.    PEP has been damaged by Scoops's infringing activities.

213.    Unless enjoined by the Court, Scoops's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

### FIFTEENTH CLAIM FOR RELIEF
### COMMON LAW UNFAIR COMPETITION
### AGAINST FREDDY'S

214.    PEP repeats and incorporates by reference herein its allegations contained in Paragraphs 1-213 of this Complaint.

215.    Freddy's knowingly directly benefited from the use of, and through Rox, used a reproduction, counterfeit, or copy of the SOUND CHOICE Marks in connection with the provision of karaoke entertainment services, by displaying and permitting to be displayed the reproduction, counterfeit, or copy of the SOUND CHOICE Marks during the provision of those services.

216.    Freddy's use of the Sound Choice Marks and the Trade Dress was open and public and was for the commercial benefit of Freddy's.

217.    PEP did not license Freddy's to make, acquire, or use reproductions, counterfeits, or copies, or to use the SOUND CHOICE Marks in connection with the services provided at its commercial establishment.

218.    Use of the SOUND CHOICE Marks in the manner attributable to Freddy's is likely to cause confusion, or to cause mistake, or to deceive Freddy's customers into believing that the services those customers are receiving are being provided with the authorization of PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

219.    Freddy's acts were willful and knowing.

220.    PEP has been damaged by Freddy's infringing activities.

221.    Unless enjoined by the Court, Freddy's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PEP prays for judgment against Rox and that the Court:

A.    Find that Rox has committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks in violation of 15 U.S.C. § 1114;

B.    Find that Scoops, through Rox, has committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks in violation of 15 U.S.C. § 1114;

C.    Find that Freddy's, through Rox, has committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks in violation of 15 U.S.C. § 1114;

D.      Find that Rox has engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Rox's unauthorized use of the Sound Choice marks;

E.      Find that Scoops, through Rox, has engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Rox's unauthorized use of the Sound Choice marks;

F.      Find that Freddy's, through Rox, has engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Rox's unauthorized use of the Sound Choice marks;

G.      Find that Rox has engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Rox's unauthorized use of the Trade Dress;

H.      Find that Scoops, through Rox, engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Rox's unauthorized use of the Trade Dress;

I.      Find that Freddy's, through Rox, engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a) because of Rox's unauthorized use of the Trade Dress;

J.      Find that Rox has engaged in unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.44 because of Rox's unauthorized use of the Sound Choice marks and the Trade Dress;

K.      Find that Scoops, through Rox, has engaged in unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.44 because of Rox's unauthorized use of the Sound Choice marks and the Trade Dress;

L.      Find that Freddy's, through Rox, has engaged in unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.44 because of Rox's unauthorized use of the Sound Choice marks and the Trade Dress;

M.      Find that Rox has engaged in unfair competition detrimental to PEP in violation of common law because of Rox's unauthorized use of the Sound Choice marks and the trade dress;

N.      Find that Scoops, through Rox, engaged in unfair competition detrimental to PEP in violation of common law because of Rox's unauthorized use of the Sound Choice marks and the trade dress;

O.      Find that Freddy's, through Rox, engaged in unfair competition detrimental to PEP in violation of common law because of Rox's unauthorized use of the Sound Choice marks and the trade dress;

P.      Enter judgment against Rox and in favor of PEP on all applicable counts;

Q.      Enter judgment against Scoops and in favor of PEP on all applicable counts;

R.      Enter judgment against Freddy's and in favor of PEP on all applicable counts;

S.      Find that Rox's activities were in all respects conducted willfully and for profit;

T.      Find that Scoops's activities were in all respects conducted willfully and for profit;

U.      Find that Freddy's activities were in all respects conducted willfully and for profit;

V.      Award to PEP Rox's profits and the damages sustained by PEP because of Rox's conduct in infringing the Sound Choice Marks, the Trade Dress, or both, or, in the alternative, statutory damages per trademark infringed by counterfeiting, in an amount up to Two Million and no/100 dollars ($2,000,000.00) per mark infringed, and in any event in an amount not less than $25,000 for each karaoke system operated by Rox, and not less than $50,000 for each establishment in which the infringement occurred, in accordance with 15 U.S.C. § 1117;

W.      Award to PEP Scoops's profits and the damages sustained by PEP because of Scoops's conduct in infringing the Sound Choice Marks, the Trade Dress, or both, or, in the alternative, statutory damages per trademark infringed by counterfeiting, in an amount up to Two Million and no/100 dollars ($2,000,000.00) per mark infringed, and in any event in an amount not less than $25,000 for each karaoke system operated by Rox, in accordance with 15 U.S.C. § 1117;

X.      Award to PEP Freddy's profits and the damages sustained by PEP because of Freddy's conduct in infringing the Sound Choice Marks, the Trade Dress, or both, or, in the alternative, statutory damages per trademark infringed by counterfeiting, in an amount up to Two Million and no/100 dollars ($2,000,000.00) per mark infringed, and in any event in an amount not less than $25,000 for each karaoke system operated by Rox, in accordance with 15 U.S.C. § 1117;

Y.      Award to PEP Rox's profits and the damages sustained by PEP because of Rox's acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount not less than $25,000 for each karaoke system operated by Rox, and not less than $50,000 for each establishment in which the infringement occurred, in accordance with 15 U.S.C. § 1117;

Z.      Award to PEP Scoops's profits and the damages sustained by PEP because of Scoops's acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount not less than $25,000 for each karaoke system operated by Rox, in accordance with 15 U.S.C. § 1117;

AA.      Award to PEP Freddy's profits and the damages sustained by PEP because of Scoops's acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount

not less than $25,000 for each karaoke system operated by Rox, in accordance with 15 U.S.C. § 1117;

BB.     Award to PEP treble, punitive, or otherwise enhanced damages, as available, for Rox's acts of willful infringement, in accordance with 15 U.S.C. § 1117;

CC.     Award to PEP treble, punitive, or otherwise enhanced damages, as available, for Scoops's acts of willful infringement, in accordance with 15 U.S.C. § 1117;

DD.     Award to PEP treble, punitive, or otherwise enhanced damages, as available, for Freddy's acts of willful infringement, in accordance with 15 U.S.C. § 1117;

EE.     Order all computer discs, drives, or other media belonging to Rox, which media contain counterfeits of PEP's marks or Trade Dress or of marks belonging to other manufacturers, to be delivered up for destruction, in accordance with 15 U.S.C. § 1116 and 15 U.S.C. § 1118;

FF.     Grant PEP preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and Trade dress by Rox, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

GG.     Grant PEP preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and Trade dress by Scoops, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

HH.     Grant PEP preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and Trade dress by Freddy's, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

II.     Grant PEP preliminary and permanent injunctive relief against further false designations of origin by Rox with respect to words, names and symbols associated with other manufacturers, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

JJ.     Grant PEP preliminary and permanent injunctive relief against further false designations of origin by Scoops with respect to words, names and symbols associated with other manufacturers, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

KK.     Grant PEP preliminary and permanent injunctive relief against further false designations of origin by Freddy's with respect to words, names and symbols associated with other manufacturers, in accordance with 15 U.S.C. § 1116 and Minn. Stat. § 325D.45;

LL.     Award PEP its costs of suit and attorney fees, to the extent not awarded above, in accordance with 15 U.S.C. § 1117 and Minn. Stat. § 325D.45; and

MM.   Grant PEP such other and further relief as justice may require.

**Respectfully submitted,**

Dated:   7/10/2015                    By:      s/Jessica M. Alm
                                               David R. Fairbairn (No. 28,125)
                                               Jessica M. Alm (No. 395,245)
                                               KINNEY & LANGE, P.A.
                                               The Kinney & Lange Building
                                               312 South Third Street
                                               Minneapolis, MN  55415-1002
                                               Email:        drfairbairn@kinney.com
                                                             jalm@kinney.com
                                               Telephone:   (612) 339-1863
                                               Facsimile:   (612) 339-6580

                                               **ATTORNEYS FOR PLAINTIFF
                                               PHOENIX ENTERTAINMENT
                                               PARTNERS, LLC**